# QUENZILL COVINGTON v. STATE OF MARYLAND

[No. 31, September Term, 1977.]

*Decided May 22, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and reargued

before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Arnold M. Zerwitz, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. LEVINE, ELDRIDGE and COLE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which LEVINE and COLE, JJ., concur at page 546 *infra.*

In *Covington v. State,* 34 Md. App. 454, 367 A. 2d 974 (1977), the Court of Special Appeals held that appellant, Quenzill Covington (Covington), failed to preserve for appellate review his contention that the trial court denied him an opportunity to make an argument on the issue of whether there was sufficient evidence to warrant his conviction. We agree with the Court of Special Appeals.

The case was argued before all 12 judges of the Court of Special Appeals. Ten judges joined in the court's opinion. Two other judges filed a concurring opinion asserting that the right was waived. Since the facts are fully set forth in the opinion of that court, we shall relate only such facts as are necessary to a clear understanding of the issue presented.

Covington was charged in the Criminal Court of Baltimore with a number of violations of the narcotics laws. He was convicted on a single count of distribution of heroin upon the basis of an agreed statement of facts which was submitted to the trial court.

Chief Judge Gilbert opened his opinion for the Court of Special Appeals by stating:

> "The plea of not guilty, accompanied by an 'Agreed Statement of Facts', is a peculiar animal. As

was succinctly stated in *Barnes v. State,* 31 Md. App. 25, 35, 354 A. 2d 499, 505 (1976),

> 'Under an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. If there is agreement as to the facts, there is no dispute [.]' " *Id.* at 455.

It would follow, however, that it would be incumbent upon a trial judge to determine whether the agreed facts were legally sufficient to convict of the crime charged.

The agreed statement of facts was a product of plea negotiations. The trial judge painstakingly questioned Covington, eliciting from him acknowledgment that he was willing to give up his right to testify; that he understood that he could elect to be tried by a jury; that if he had a trial he would have the right to see and hear all of the witnesses and his attorney would have a right to cross-examine these witnesses as well as the right to stop the State from producing any evidence which would be otherwise inadmissible; that he was giving up his right to testify on his own behalf; and that he was agreeing to the truth of the facts stated. The trial judge specifically commented:

> "I will only proceed in this case if the defendant forgoes his right to testify. In other words, he has to agree to the facts and not testify to the contrary. Anything he wants to say in mitigation he can say after and if a guilty finding is made."

After the statement of facts had been presented, the following transpired:

"MR. GROSSFELD [prosecutor]: That would be the statement of facts, Your Honor.

"THE COURT: Mr. Carey, any additions or corrections to the statement of facts?

"MR. CAREY [defense counsel]: I have advised Mr. Covington that at this time you would hear him as to any additions or corrections and he indicated to me that he has none. Is that correct, Mr. Covington?

"THE DEFENDANT: Yes.

"THE COURT: All right. Based upon the facts given to me by the State, I find that they are sufficient to find the defendant guilty beyond a reasonable doubt of the first count in indictment number 3214. And, accordingly, I do find him guilty of the charge."

The trial judge then invited counsel and Covington to make any comments they desired before imposition of sentence. No objection was made.

We granted Covington's petition for certiorari that we might consider his allegation that the trial judge erred in finding him guilty "without first affording him the right to present closing argument."

Maryland Rule 725 f makes Rule 522 applicable to criminal cases. Under Rule 522 a formal exception to a ruling or order of the court is unnecessary, but it is incumbent upon a litigant to make known to the court an objection to the action of the court at the earliest practicable opportunity. *See, e.g., Greater Balto. Con. Mkt. A. v. Duvall,* 255 Md. 90, 94, 256 A. 2d 882 (1969); *Fowler v. Benton,* 229 Md. 571, 575, 185 A. 2d 344 (1962); *State Roads Commission v. Berry,* 208 Md. 461, 466-67, 118 A. 2d 649 (1955); *Banks v. State,* 203 Md. 488, 495, 102 A. 2d 267 (1954); *Kennedy v. Crouch,* 191 Md. 580, 586,

62 A. 2d 582 (1948); *Apple v. State,* 190 Md. 661, 667, 59 A. 2d 509 (1948); *Davis v. State,* 189 Md. 269, 273, 55 A. 2d 702 (1947); and *Courtney v. State,* 187 Md. 1, 4-5, 48 A. 2d 430 (1946). Under Rule 885 we do "not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the [trial] court . . . ."

In *Yopps v. State,* 228 Md. 204, 178 A. 2d 879 (1962), a defendant who was offended by the failure of a trial judge to permit argument on his behalf immediately protested to the judge. It will be seen that no such protest was made here.

Covington's proper remedy is under the Maryland version of the Uniform Post Conviction Procedure Act, Maryland Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27, §§ 645A-645J, originally passed in 1958 with the intent that there be brought together "into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are at present available for challenging the validity of a sentence . . . ." *State v. D'Onofrio,* 221 Md. 20, 29, 155 A. 2d 643 (1959); *Brady v. State,* 222 Md. 442, 447, 160 A. 2d 912 (1960). We observed in *State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156 (1971):

> "The public and the accused are entitled to speedy administration of justice. Memories fade with the passage of time. Therefore, the quest for truth and justice will best be served by the earliest possible determination of factual questions. For that reason it becomes important that orderly processes for those determinations be established and, once established, that there be adherence to those processes." *Id.* at 24.

In *Zimmerman* an accused complained when the record did not affirmatively show that he knowingly made an election of a court trial rather than a jury trial, notwithstanding the fact that an election of a court trial had been made by his attorney in his presence. The Court of Special Appeals proposed sending the case back to the trial court for a

determination as to whether there was a knowing waiver of the right of trial by jury. The record was to be returned to the appellate court after this determination. We pointed to Rule 1085 applicable to the Court of Special Appeals, the counterpart of Rule 885, and said that "[i]f Zimmerman honestly believe[d] that he did not knowingly elect a court trial rather than a jury trial, the avenue [was] open for him through post conviction procedure to air not only that contention but all other contentions relative to any impropriety in the course of that trial." We said that that "would be in accordance with the established procedures in Maryland and, at the same time, would provide full protection to the rights of Zimmerman."

Covington is not represented on appeal by his trial counsel. We are unable to read the mind of his trial counsel so as to determine why he did not raise the issue below. There is nothing in this record to indicate that he was in any way prevented from raising the issue at trial in the same manner in which the question was raised in *Yopps.* At a hearing under the Post Conviction Procedure Act, evidentiary issues may be fully explored. Such exploration would develop whether trial counsel fully understood what was being done and was satisfied with it. It would be determined, for instance, whether he had advised the trial judge that although he wished to be heard on the sentence to be imposed he did not wish to argue the issue of guilt or innocence. It likewise would be determined whether as a part of the plea bargain the defense conceded the sufficiency of the evidence and desired only to be heard on the sentence. After such full development of the facts surrounding this incident, an appellate court will not be placed in the position of speculating as to whether the complaint might be appellate afterthought. The court will have before it a full record upon which to determine whether the right of closing argument on the facts was denied to Covington, whether he knowingly waived such argument, or whether such argument was waived as a matter of trial tactics. Our insistence that an appellate court reach its conclusions with full information before it in no way deprives Covington of any rights. We believe it to be by far the sounder

approach to the administration of justice. Nothing in *Squire v. State,* 280 Md. 132, 368 A. 2d 1019 (1977), compels a contrary decision.

*Judgment affirmed; appellant to pay the costs.*

*Eldridge, J., dissenting:*

In my view, the record in this case clearly shows that there was a denial of Covington's constitutional right to have closing argument made before the rendition of a verdict. The record also shows that there was no waiver of that right. In fact, there was no opportunity for counsel to have waived Covington's right to have closing argument. Consequently, I would not relegate the matter to a hearing under the Post Conviction Procedure Act. Instead, I would reverse.

Although the majority, as well as the parties, refer to this case as having been tried on an "agreed statement of facts," the case was actually tried on an agreed statement of the State's evidence. Moreover, it should be kept in mind that Covington pled *not guilty* and was given the opportunity by the trial judge to submit additions or corrections to the prosecution's statement of the evidence. After the prosecuting attorney read a statement of what the State's principal witness would have testified to, as well as what would have been revealed by certain other evidence, the following colloquy occurred:

> "PROSECUTING ATTORNEY: That would be the statement of facts, Your Honor.
>
> "THE COURT: Mr. [defense attorney], any additions or corrections to the statement of facts?
>
> "DEFENSE ATTORNEY: I have advised Mr. Covington that at this time you would hear him as to any additions or corrections and he indicated to me that he has none. Is that correct, Mr. Covington?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: All right. Based upon the facts given

to me by the State, I find that they are sufficient to find the defendant guilty beyond a reasonable doubt of the first count in indictment number 3214 [distribution of heroin]. I do find him guilty of the charge."

The record thus shows that the trial judge, in the same statement, moved from a discussion with the defendant concerning additions or corrections to the evidence, to a pronouncement of the verdict. There was clearly no opportunity for counsel to have made closing argument.

In affirming the conviction, the majority in the Court of Special Appeals pointed out that the defendant could proceed by way of a post conviction petition under Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 645A, and indicated that the defendant would be entitled to relief if he could demonstrate "that there was no opportunity for argument by counsel *before or after* the court announced its verdict." *Covington v. State,* 34 Md. App. 454, 466, 367 A. 2d 974 (1977) (emphasis supplied). Thus, the majority in the Court of Special Appeals believed that a criminal defendant's right to have closing argument could be satisfied by argument after the verdict. The majority opinion in this Court does not expressly deal with the issue, although it does take the position that Covington's counsel should have raised the matter after the verdict was rendered.

The matter of a criminal defendant's right to have his counsel present closing argument was dealt with by this Court in *Yopps v. State,* 228 Md. 204, 178 A. 2d 879 (1962). The defendant in that case was being tried by the court on a charge of burglary. He admitted being in the vicinity of the burglarized property but denied any involvement in the crime. In the trial court, at the close of testimony on behalf of the defense, the following occurred (228 Md. at 206):

"DEFENSE ATTORNEY: Step down.

"THE COURT: Anything else?

"DEFENSE ATTORNEY: That is our case, your Honor.

"THE COURT: Any rebuttal?

"PROSECUTING ATTORNEY: No, your Honor.
"THE COURT: The verdict is guilty.

\* \* \*

"DEFENSE ATTORNEY: You didn't even ask me for argument in this case to point out the fact that these, that whoever saw these people there never saw them carrying anything back and forth.
"THE COURT: It is a question of balancing the testimony of what I heard from these witnesses as against his, who I believe, and perfectly obvious who I must believe under the circumstances.
"DEFENSE ATTORNEY: You are not giving the benefit of the doubt.
"THE COURT: Wouldn't change my mind about it.
"DEFENSE ATTORNEY: You must have corpus delicti of some kind and the explanation is reasonable.
"THE COURT: I don't think it is . . . . Maybe they will disagree with me upstairs and you have a right to go up there.
"DEFENSE ATTORNEY: All right, sir . . . ."

This Court, in reversing the conviction in *Yopps,* stated (*id.* at 207, emphasis supplied):

"The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, *however simple, clear, unimpeached, and conclusive the evidence may seem,* unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny accused such right."

And later (*id.* at 208, emphasis supplied):

"It is clear to us that the same constitutional guaranty applicable to a trial by a jury applies with

equal force to a trial before a judge sitting without a jury.

"The State relies heavily on the case of *People v. Don Carlos* (Cal.), 117 P. 2d 748. However, that case is distinguishable on the facts from the one at bar. In *Don Carlos* the record indicated that counsel for the accused had commenced his argument by stating that the evidence failed to sustain the charge. Here, no opportunity was afforded counsel to even begin an argument *before* the judge's verdict of guilty."

*Yopps* stands for the principle, therefore, that the right to counsel includes an opportunity to have counsel make closing argument, no matter how "simple, clear, unimpeached, and conclusive the evidence" may be, *before* the trier of facts, whether a jury or judge, renders a verdict. *See also Rome and Modo v. State,* 236 Md. 583, 588, 204 A. 2d 674 (1964), pointing out that in *Yopps* "it was held that the denial of an opportunity to argue the case *before* returning a verdict of guilty was prejudicial to the right of the accused to be represented by counsel throughout the trial." (Emphasis supplied.)

The Court of Special Appeals, in *Moore a/k/a Smith v. State,* 7 Md. App. 330, 254 A. 2d 717 (1969), applied the principles set forth in *Yopps* to a factual situation very much like the one in the instant case. *Moore* was a non-jury criminal case where, at the conclusion of the defense testimony, the following colloquy occurred (7 Md. App. at 331-332):

"THE COURT: Is that all?

"DEFENSE ATTORNEY: That's it.

"THE COURT: Anything else you want to tell me?

"THE WITNESS: No, sir.

"THE COURT: All right, step down.

"DEFENSE ATTORNEY: That's our case, your Honor.

"PROSECUTING ATTORNEY: That's all, your Honor.

"THE COURT: Guilty on the first count. . . ."

In *Moore,* unlike *Yopps,* the defendant's attorney did not raise the matter of closing argument after the rendition of the verdict. Nevertheless the Court of Special Appeals, in an opinion by Chief Judge Murphy, reversed the conviction. After reviewing this Court's opinions in *Yopps* and *Rome,* the Court of Special Appeals stated (7 Md. App. at 333-334):

> "We think the present case is controlled by *Yopps* .... On its face, the record indicates that the court announced its guilty verdict without first affording appellant's counsel an opportunity to argue the merits of the case. The failure of appellant's counsel, after the court announced its verdict, to assert the right to present argument, as was done by defense counsel in *Yopps,* does not of itself constitute a waiver of such right.... The State constitutional right of an accused to have counsel argue the merits of his case before entry of a verdict, as articulated in *Yopps,* is based on the provisions of Article 21 of the Maryland Declaration of Rights guaranteeing an accused in a criminal case the right 'to be allowed counsel.' We think it likely that the right is similarly rooted in the provisions of the Sixth Amendment to the Federal Constitution, now applicable to the states through the Fourteenth Amendment, *Gideon v. Wainwright,* 372 U. S. 335, guaranteeing an accused in a criminal case the effective assistance of counsel for his defense. While it is true that constitutional rights, whether Federal or State, may be waived, we find no such waiver on the facts of this case."

Subsequent to *Yopps* and *Moore,* the Supreme Court in *Herring v. New York,* 422 U. S. 853, 859-860, 95 S. Ct. 2550, 45 L.Ed.2d 593 (1975), confirmed that the Sixth Amendment right to counsel includes the right to have counsel make closing argument. The Court there stated (422 U. S. at 858-859, emphasis supplied):

> "There can be no doubt that closing argument for the defense is a basic element of the adversary

fact-finding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, *no matter how strong the case for the prosecution may appear to the presiding judge.* The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.

"One of many cases so holding was *Yopps v. State,* 228 Md. 204, 178 A. 2d 879 (1962). . . ."

After discussing and quoting from the *Yopps* case, the Court in *Herring* went on to deal with the necessity for closing argument prior to the rendition of a verdict (422 U. S. at 862, emphasis supplied):

"It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. . . .

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a fact-finding process, *no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.*"

The Supreme Court also emphasized that the right attaches to *all* criminal cases, including those which might seem to the trial judge otherwise settled at the close of evidence (422 U. S. at 863):

> "Some cases may appear to the trial judge to be simple — open and shut — at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be 'likely to leave [a] judge just where it found him.' But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel."

As previously pointed out, the opinions in *Yopps v. State, supra,* and *Moore a/k/a Smith v. State, supra,* indicate that the right to have counsel make closing argument means argument *prior* to the rendition of the verdict. The Supreme Court's opinion in *Herring* reinforces this position. The Court emphasized how "important" was the "opportunity finally to marshal the evidence ... *before* submission of the case to judgment." 422 U. S. at 862 (emphasis supplied). A right of this character is certainly not satisfied merely by affording an opportunity to persuade the court, *after it renders a guilty verdict,* to reconsider or change its mind. One court has characterized a closing argument at this stage as "futile," *United States v. Walls,* 443 F. 2d 1220, 1223 (6th Cir. 1971). However, without in any way intimating that judges are not amenable to reconsideration arguments, there is nevertheless a considerable difference between making an argument before a judge has announced a decision and making that same argument after the judge has formally taken a contrary position. Consequently, I disagree with the statement in the majority opinion of the Court of Special Appeals, and with any similar thought that may lurk in the majority opinion of this Court, that affording an opportunity for argument *after* the court announces its verdict would satisfy a criminal

defendant's constitutional right to have his counsel make closing argument.

On the other hand, I do not agree with the defendant's contention that the right to closing argument before the rendition of the verdict is of such a character that there can be a waiver only where the record affirmatively shows a knowing and intelligent relinquishment of the right. *Cf. Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). The Supreme Court in *Herring v. New York, supra,* likened the right to have counsel make closing argument to other aspects of the right to the assistance of counsel, such as the right to have counsel elicit the defendant's sworn testimony and the right of counsel to decide when during the course of the defense to have the accused take the stand, 422 U. S. at 857-858. These rights clearly fall within the category of tactical decisions by counsel. As the Supreme Court said in *Estelle v. Williams,* 425 U. S. 501, 512, 96 S. Ct. 1691, 48 L.Ed.2d 126 (1976), regarding the constitutional right of a criminal defendant not to be tried in prison clothes:

> "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney."

Like the right not to be tried in prison garb, the right to make closing argument falls within the category of a strategic matter resting with the accused and his attorney. Normally, when there is no assertion of a right of this character, an appellate court should assume that a strategic decision was made to waive the exercise of the right.

However, if counsel is never afforded the opportunity to exercise or assert the right to make closing argument, he has obviously never had the opportunity to waive the right as a matter of strategy. One cannot waive what one has no opportunity to waive. Cases in several jurisdictions, in applying the principles of *Herring v. New York, supra,* have recognized that there must be an opportunity for counsel to make closing argument before the verdict is announced. *See*

*United States v. Walls, supra,* 443 F. 2d at 1223-1224; *United States v. Commonwealth of Pennsylvania,* 273 F. Supp. 923 (E.D. Pa. 1967); *Grigsby v. State,* 333 So. 2d 891 (Ala. Cr. App. 1976); *City of Columbus v. Woodrick,* 48 Ohio App.2d 274, 357 N.E.2d 58 (1976); *Fuhrman v. Fuhrman,* 254 N.W.2d 97, 101-102 (N.D. 1977). *Cf. State v. Mann,* 361 A. 2d 897, 903-905 (Me. 1976).[1]

Turning to the facts of this case, the record clearly shows that there was a deprivation of the defendant Covington's right to have his attorney make closing argument. No post conviction hearing is necessary to establish the denial of the constitutional right. That there may have been an opportunity for the defendant's attorney to have argued the issue of guilt or innocence after the pronouncement of the verdict is not sufficient since, as the cases hold, there must be an opportunity for counsel to make such argument *before* the verdict is rendered. The record reveals that there was utterly no opportunity for counsel to have argued or requested to make closing argument on guilt or innocence prior to the verdict. Moreover, there was no opportunity for counsel to have made a tactical decision to waive argument. As soon as the prosecuting attorney indicated that he had finished giving the statement of the prosecution's evidence, the court asked the defense whether there were "any additions or corrections to the statement of facts." Defense counsel, in response, informed the court that he had advised the defendant that the court "would hear him as to any additions or corrections and he indicated to me that he has none. Is that correct, Mr. Covington?" In response to the defense attorney's question, the defendant himself answered, "Yes." Immediately upon

---

1. In some cases decided prior to Herring v. New York, 422 U. S. 853, 95 S. Ct. 2550, 45 L.Ed.2d 593 (1975), courts found no deprivation of a right to make closing argument, pointing out that no request for argument was made. *See, e.g.,* United States ex rel. Spears v. Johnson, 463 F. 2d 1024 (3d Cir. 1972); West v. United States, 399 F. 2d 467 (5th Cir. 1968); Casterlow v. State, 256 Ind. 214, 267 N.E.2d 552 (1971); State v. Hale, 472 S.W.2d 365 (Mo. 1971). In three of these cases, *Johnson, Casterlow* and *Hale,* it would appear from the facts set out in the courts' opinions that there was some opportunity to have requested to make closing argument prior to the verdict. And in *West,* the primary holding of the court was that there was no right to make closing argument in that nonjury case under the Federal Juvenile Delinquency Act, 399 F. 2d at 470.

hearing that, the court replied: "All right. Based upon the facts given to me by the State, I find . . . the defendant guilty . . . of the first count in indictment number 3214. I do find him guilty of the charge." There was obviously no opportunity before the verdict was announced for counsel to have argued, requested time for argument or waived argument. As the Supreme Court of North Dakota stated in reversing a judgment on this ground: "No opportunity to argue, or to waive argument, was allowed." *Fuhrman v. Fuhrman, supra,* 254 N.W.2d at 101. Thus, the defendant Covington was denied his constitutional right to have counsel present closing argument.

The majority opinion takes the position that the defendant's attorney should have made an objection after rendition of the verdict. However, this would have been too late to satisfy the defendant's constitutional right to closing argument *before* the rendition of the verdict. Once the verdict was rendered, the damage was done.

Furthermore, I do not agree with the majority's invocation of Maryland Rule 885 as a basis for denying relief to the defendant Covington. Rule 885, like Rule 1085 applicable to the Court of Special Appeals, provides that this Court will not *ordinarily* consider issues not presented to the trial court. As shown by its language, Rule 885 is not absolute, and an appellate court may in its discretion take cognizance of error even though the matter was not raised in the trial court. *Squire v. State,* 280 Md. 132, 134-135, 368 A. 2d 1019 (1977). In this case the record discloses the denial of the constitutional right to have closing argument made before verdict, with no waiver of that right before the announcement of the verdict. Thus, we can ascertain at this time that the defendant would be entitled to relief in a post conviction proceeding. Under the circumstances of this case, interests of fairness, expedition and judicial economy warrant the exercise of discretion under Rule 885 to decide the issue on direct appeal. *See, e.g., Walters v. State,* 242 Md. 235, 238, 218 A. 2d 678 (1966); *Hickman v. State,* 242 Md. 91, 94, 218 A. 2d 21 (1966); *Petrey v. State,* 239 Md. 601, 603, 212 A. 2d 277 (1965); *Johnson v. State,* 237 Md. 283, 293, 206 A. 2d 138

(1965); *Royal v. State,* 236 Md. 443, 449-450, 204 A. 2d 500 (1964). *See also State v. Evans,* 278 Md. 197, 210-212, 362 A. 2d 629 (1976). It is for this reason that the court in *Moore a/k/a Smith v. State, supra,* 7 Md. App. 330, under identical circumstances, properly reversed a criminal conviction for failure to provide an opportunity for closing argument.

The majority, in holding that Covington's proper remedy is under the Post Conviction Procedure Act, relies on the fact that Covington is represented by different counsel on appeal and speculates that his trial attorney may have "fully understood what was being done and was satisfied with it." Although different individual attorneys were involved, Covington was represented by the same office at trial and on appeal, namely the Office of the Public Defender. The representative of that office who argued the case before us stated that if an opportunity to make closing argument had been afforded, the office would have argued the defense of entrapment. Apart from this, it does not seem to me that the later testimony of trial counsel, as to whether he would or would not have made closing argument if he had been given the opportunity, is pertinent. The defendant Covington was entitled to have his trial attorney make a tactical decision concerning closing argument after the presentation of evidence but before the rendition of the verdict. That decision would of necessity have taken into consideration the evidence presented by the prosecution as well as any "additions or corrections" which the defendant may have had. Whatever his trial attorney may later say in a post conviction hearing, it is clear that there was no opportunity *at that time* for him to have made the tactical decision to offer closing argument or to forego such argument.

Judges Levine and Cole have authorized me to state that they concur with the views expressed herein.