GEORGE FRANKLIN SINE *v.* STATE
OF MARYLAND

[No. 22, September Term, 1978.]

*Decided November 6, 1978.*

The cause was submitted on briefs to THOMPSON, DAVIDSON and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Victoria A. Salner, Assistant Public Defender,* for appellant.

Submitted by *Francis Bill Burch, Attorney General, Stephen Rosenbaum, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Gerald K. Anders, Assistant State's Attorney for Anne Arundel County,* for appellee.

THOMPSON, J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 636 *infra.*

George Franklin Sine was convicted in a jury trial, in the Circuit Court for Anne Arundel County, of attempting to obtain money under false pretenses, conspiracy to obtain money under false pretenses, and making a false report to the police. He was sentenced to two concurrent five year terms on the first two charges and to a one year term, running consecutively, on the false report charge.

On appeal he raises the following issues:

1. Whether the court gave an erroneous instruction concerning the burden of proving the voluntariness of a confession.
2. Whether the evidence was sufficient to sustain the conviction of making a false report.
3. Whether the sentence on the charge of making a false report was illegal because it exceeded the statutory maximum.

Although some of the essential facts were disputed by the appellant, the State's evidence showed that on March 23, 1976, the appellant, together with his brother, Joseph Sine, and two friends, Michael and Kenneth Carey, staged a motor vehicle collision on Constant Avenue in Anne Arundel County. In preparation for the collision, appellant parked his automobile on Constant Avenue and stood nearby while Michael Carey, operating a rented U-Haul truck drove into appellant's car. The testimony showed that appellant even went so far as to drink "a lot of pickle juice before the accident and [that he] swallowed it to stir [his] ulcers up . . . ," apparently to enhance his performance of being injured when the medical personnel arrived.

After the collision, an ambulance was called and Officer George H. Hall of the Anne Arundel County Police Force was dispatched to the scene. During his on-the-scene investigation, Officer Hall was told by Michael Carey that the U-Haul truck which he, Carey, had been driving crossed the center line of Constant Avenue and collided with appellant's car. Carey gave no explanation of why this happened. Carey's version of how the collision occurred was corroborated in a statement by Joseph Sine to Officer Hall at North Arundel Hospital approximately 30 minutes later. Officer Hall did not speak to the appellant who was then being treated by emergency medical personnel.

Appellant was taken from the scene of the collision to University Hospital in Baltimore where he was examined for injuries. No external injuries were discovered and routine exploratory surgery revealed no internal hemorrhaging. He remained in the hospital overnight and was discharged the following day.

Appellant subsequently made a claim for compensation against U-Haul. Some settlement negotiations took place directly between appellant and U-Haul's insurance adjustor but they failed to reach an agreement and appellant subsequently brought suit against Michael Carey and U-Haul in an attempt to recover damages alleged to have resulted from the collision. Two Anne Arundel County detectives testified that appellant told them that he had staged the

accident, as outlined above, and that he intended to collect a sizeable amount of money as the result of a lawsuit based on the collision. These statements were made while appellant was serving a sentence in the penitentiary on an unrelated conviction. A pretrial motion to suppress the statements, on the ground that they were made involuntarily, was denied and their admissibility is not contested on appeal.

## I The Erroneous Jury Instruction

The trial court gave the following instruction on the issue of the voluntariness of the above-mentioned statements:

> "Likewise, a confession in this state must be freely and voluntarily given. If you find that there was a statement made by the accused, but this statement was not freely and voluntarily given with complete knowledge and waiver of his constitutional right to remain silent, then ... and you find that by a preponderance of the evidence, you're satisfied that that is it, then of course, that statement cannot be used to convict him." (ellipsis in transcript).

This was the only instruction given on the point. Although it does not explicitly allocate the burden of proof as between the parties, this statement is clearly susceptible of the interpretation that the appellant bore the burden of proving by a preponderance of the evidence that his incriminating statements were made involuntarily. Accordingly, it constituted error.[1] *Gill v. State,* 265 Md. 350, 289 A. 2d 575 (1972); *Linkins v. State,* 202 Md. 212, 96 A. 2d 246 (1953);

---

1. We note that even if the instruction had placed the burden on the State to prove voluntariness before the jury by a preponderance of the evidence it would have been erroneous. In Gill v. State, *supra,* and in many other cases, the Court of Appeals pointed out that when an objection is raised to the admissibility of a confession on voluntariness grounds the State bears a double burden. First, it must prove to the trial judge by a preponderance of the evidence that the statement was voluntary. This will gain it admission into evidence. Second, "[d]espite the fact that the accused's statement is received in evidence, if, from all the testimony in the case, the jury is not satisfied *beyond a reasonable doubt* that it was the free and voluntary expression of the suspect, then they must disregard it in determining his guilt or innocence." 265 Md. at 358, 289 A. 2d at 579 (emphasis added).

*Smith v. State,* 189 Md. 596, 56 A. 2d 818 (1948). The record shows, however, and appellant concedes, that no objection was made to the instruction as required by Md. Rule 757 f.. Therefore, the right to appeal this point has been waived. Rule 757 h. Nevertheless, appellant urges us to exercise our discretion and take cognizance of and correct this error in the instructions under the provision of Rule 757 h. The discretion conferred upon us by that rule will not be exercised as a matter of course, even where the error complained of is clear. In *Squire v. State,* 280 Md. 132, 135, 368 A. 2d 1019, 1020 (1977), the Court of Appeals pointed out that "absent the existence of compelling circumstances, the failure of a defendant to register an objection to a jury instruction pursuant to Rule 756 f [now Rule 757 f] bars our consideration of the matter." In *Dempsey v. State,* 277 Md. 134, 142, 355 A. 2d 455, 459 (1976), the Court pointed out that "an appellate court may in its discretion *in an exceptional case* take cognizance of plain error even though the matter was not raised in the trial court." (emphasis added). What constitutes compelling or exceptional circumstances in a particular case necessarily depends on the facts of that case. While particular considerations have been pointed out in individual cases applying the plain error rule, the fact remains that there are no constant and immutable guidelines controlling the exercise of the appellate court's discretion in this area. *See, Williams v. State,* 34 Md. App. 206, 207, 366 A. 2d 399, 400 (1976) (Moylan, J. concurring).

Appellant points to three considerations which, he argues, would justify the exercise of our discretion in his favor in this case. First, he points out that the error was prejudicial. The mere fact that the alleged error may have resulted in some prejudice to the appellant does not, in itself, justify the invocation of the plain error rule. Otherwise, any error that could not be considered harmless would be reviewable and Rule 757 f and h would be meaningless.

Second, he states that the error here, even if pointed out to the trial judge, could not have been corrected. We disagree. The instruction was of such a character that if the error had been brought to the court's attention the proper clarification

could have been made without confusing the jury and any prejudicial effect could have been dissipated. In addition, the principle of law in question has been settled in this State for many years. *Gill v. State, supra; Linkins v. State, supra; Smith v. State, supra,* and we have no doubt that had the error been pointed out, the trial judge would have corrected it.

The third consideration raised by appellant is "the likelihood that defense counsel's failure to object was neither a trial tactic nor inadvertence, but rather the result of a belief that the instruction as given was in accord with the law." In his argument to the jury, made prior to the court's instructions, defense counsel said:

> "Judge Childs will instruct you to the effect that in order for a statement to be identified and go to the jury as evidence, it has to be freely and voluntarily made and the burden is upon the State to prove by a preponderance of evidence that that statement was freely and voluntarily made."

In addition, he submitted a written request for a jury instruction to the same effect. Apparently, therefore, counsel was aware that the burden of proving the voluntariness of a confession was with the State. Although he was apparently under a misapprehension as to the extent of that burden with respect to whether or not the jury may consider it as bearing on guilt after all the evidence is in. *Gill v. State, supra; Linkins v. State, supra; Smith v. State, supra.* It appears, therefore, that counsel's failure to object to the erroneous jury instruction was more the result of inadvertence than of an understandable belief that the instruction was correct. It may be true that even if defense counsel had objected he would have argued for a statement of the State's burden of proof less demanding than that which the law requires. On the other hand, it is also likely that had the trial judge's error been brought to his attention he would have fully and completely corrected it despite counsel's apparent imperfect position on the point. The purpose of Rule 757 f is to give the trial judge an opportunity to correct any error in his instructions, *Anderson v. State,* 12 Md. App. 186, 278 A. 2d 439 (1971), *cert.*

*denied,* 263 Md. 709 (1971), *appeal dismissed,* 405 U. S. 1050, 92 S. Ct. 1492 (1972); *White v. State,* 8 Md. App. 51, 258 A. 2d 50 (1969), *cert. denied,* 257 Md. 737 (1970); *Parker v. State,* 4 Md. App. 62, 241 A. 2d 185 (1968). In the instant case, through defense counsel's inadvertence, the trial judge was not afforded this opportunity.

In light of the above discussion we find nothing compelling or exceptional about the circumstances of this case and we therefore decline to exercise our discretion under Rule 757 h to take cognizance of this issue.

## II The False Report Conviction

The appellant contends that the evidence was insufficient to sustain his conviction for making a false report to the police. *Md. Code,* Art. 27, § 150 provides as follows:

> "Any person who makes a false statement, report or complaint, or who causes a false statement, report or complaint to be made, to any peace or police officer of this State, or of any county, city or other political subdivision of this State, knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof, shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than five hundred dollars ($500.00), or be imprisoned not more than six (6) months, or be both fined and imprisoned, in the discretion of the court."

The record clearly shows that appellant himself made no statements to the police at the scene of the accident. Nor does it appear that he made any false statements to the police at any time thereafter. He seizes upon this circumstance to make a two-pronged argument that the evidence was insufficient to convict him of the crime charged.

Appellant first argues that the only statements made to the police concerning the accident were those of his brother, Joseph Sine, and Michael Carey, the driver of the U-Haul

truck. He points out that both individuals simply stated that the U-Haul crossed the center line while coming down the hill and struck appellant's vehicle. Because these statements were factually true, he argues, there is no evidence showing that a false statement, report or complaint was made to a police officer. Assuming that the statements made by Joseph Sine and Michael Carey were factually accurate, it is clearly implicit within those statements that the collision was the result of an accident, rather than being staged by the participants. A statement which standing alone may be factually true but which is made under circumstances which would clearly cause it to mislead a listener may be regarded as a false representation. *See Fowler v. Benton,* 229 Md. 571, 579, 185 A. 2d 344, 349 (1962) (a civil fraud case wherein the court stated, "In its generic sense, a false representation is anything short of a warranty which produces upon the mind a false impression conducive to action."); *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 225, 37 A. 2d 305, 311 (1944) ("When a person intentionally misrepresents a material fact *or produces a false impression in order to mislead another,* or to entrap or cheat him, or to obtain an undue advantage of him, there is a positive fraud." (emphasis added). In *Polisher v. State,* 11 Md. App. 555, 579-80, 276 A. 2d 102, 114 (1971), this Court, in dealing with the crime of false pretenses, said, "The false representation or pretense may be made in any form or manner. It may be made by words, or conduct that has the effect of misrepresenting existing facts to the victim."

With respect to the instant case, although the statements standing alone may have been factually true, they were only partially true under the circumstances and they were employed to convey a false impression to the investigating officer. Therefore, appellant's argument that no false statements were made to the officer is without merit.

The second prong of appellant's argument on this issue is that he could not be convicted as a principal in the making of a false report because he neither made any such reports himself nor participated in, aided, or abetted the making of any such report. The evidence was clearly sufficient to show

that appellant participated in a staged accident and that he conspired with the other participants to arrange the supposed accident. The evidence also showed that the statements made by Joseph Sine and Michael Carey were part and parcel of the representation that an actual accident had taken place.

As the crime charged is a misdemeanor all those participating in it "whether as principal or perpetrator, accessory before the fact, or aider or abettor are chargeable as principals." *Polisher, supra* at 590, 276 A. 2d at 119.

### III The Sentence for Conviction Under Art. 27, § 150

Article 27, § 150 provides that anyone found guilty of having committed the proscribed act "shall be subject to a fine of not more than five hundred dollars ($500), or be imprisoned not more than six (6) months, or be both fined and imprisoned in the discretion of the court." The record shows that appellant was given a sentence of one year on this conviction and, therefore, it is clear that this sentence must be vacated and the case remanded for resentencing. In all other respects the case is affirmed.

> *Judgments affirmed, except sentence for making a false report vacated and case remanded for resentencing.*
> *²/₃ of costs to be paid by appellant and ¹/₃ by Anne Arundel County.*

*Davidson, J., dissenting:*

I agree with the majority that the trial court erred in its instructions on the question of the voluntariness of the appellant's inculpatory statements. Unlike my colleagues, however, I believe that there are compelling or exceptional circumstances in this case which justify the exercise of the discretion accorded by Maryland Rule 757 h. I, therefore, respectfully dissent.

I do not agree with the majority's assessment that the trial court's error "may have resulted in some prejudice to the

appellant." In my view, the error resulted in substantial prejudice.

The significant impact of an accused's inculpatory statement has long been recognized. Thus, in *Jackson v. Denno,*[1] the Supreme Court said:

> "It is now axiomatic that *a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession,* without regard for the truth or falsity of the confession . . . and *even though there is ample evidence aside from the confession to support the conviction."* [2]

Here the appellant adduced evidence to show that his inculpatory statements were involuntary. The record shows that these statements constituted the most damaging evidence presented against him. Indeed, it is unclear whether absent those statements, the evidence would have been sufficient to sustain his convictions. Because the trial court improperly shifted the burden of proof to the defendant, or in the alternative, improperly articulated the applicable standard by which to determine the voluntariness of the statements, the jury may well have concluded that the statements were voluntary and considered them in reaching its verdict. But for these improper instructions, the jury might have concluded that the statements were involuntary and might well have excluded them from consideration. Under these circumstances, the trial court's error was fundamental. It resulted not simply in "some" prejudice to the appellant, but rather in substantial prejudice.

Moreover, I do not agree with the majority that "if the error had been brought to the court's attention the proper clarification could have been made without confusing the jury and any prejudicial effect could have been dissipated." In order to correct this error the trial court would have had to explain either that the State had the burden of proving, not by a preponderance of the evidence, but rather beyond a

---

1. 378 U. S. 368 (1964).

2. *Id.* at 376 (emphasis added) (citation omitted).

reasonable doubt, that the incriminating statements were voluntary, or, alternatively, that the State and not the defendant had the burden of proving, not by a preponderance of the evidence, but beyond a reasonable doubt that the incriminating statements were voluntary. Additionally, the trial court would have had to define not only what is meant by a "reasonable doubt," but also by a "preponderance of the evidence." [3] At the conclusion of all of the requisite corrective instructions, the jury, in my view, would have been hopelessly confused. Thus, the prejudicial effect of the incorrect instructions would not have been dissipated.

Finally, I do not agree with the majority that it would be improper to exercise the discretion accorded by Rule 757 h because "counsel's failure to object to the erroneous jury instruction was more the result of inadvertence than of an understandable belief that the instruction was correct." In my view, the appellant's failure to object to the erroneous instruction was neither a bad guess nor a trial tactic, but resulted rather from a misunderstanding of the applicable law — a misunderstanding shared by the court and by the State despite clear articulation of the law in numerous previous cases. Under similar circumstances, in *Parker v. State,*[4] this Court determined that discretion should be exercised.[5]

The majority implicitly relies upon *Squire v. State*.[6] in which the Court of Appeals took into account, as one of the factors to be considered in determining whether to exercise discretion, the fact that counsel's failure to object stemmed from an understandable belief that the instruction was correct.[7] *Squire,* however, did not hold that it would be an

---

3. I believe here as I did in Dempsey v. State, 24 Md. App. 8 (1974), *rev'd* 277 Md. 134 (1976), that although the differences between the expressions "by a preponderance of the evidence" and "beyond a reasonable doubt" might well be discernible to a lawyer or a judge whose mastery of such legalistic parlance or jargon is part of their professional expertise, a jury of laymen totally unversed in these linguistic niceties would require clarification of the differences between these terms. *Id.* at 44 (Davidson, J., dissenting).

4. 4 Md. App. 62 (1968), *cert. denied,* 402 U. S. 984 (1971).

5. *Id.* at 67.

6. 280 Md. 132 (1977).

7. *Id.* at 136.

abuse of discretion to take cognizance of a material error where a failure to object resulted from a misapprehension of well-established law. I believe that *Parker* should be followed here.

The purpose of Rule 757 h is to serve the ends of fundamental fairness and substantial justice.[8] These ends cannot be achieved when a lawyer for any reason misapprehends the law and fails to object to a material erroneous instruction. Whether the reason for counsel's misapprehension of the law is understandable or inexcusable, the result is the same; an error in instructions will not be brought to the attention of the trial court. Thus, as a practical matter, the trial court's error will not be corrected and is, in effect, irremediable. An accused's only recourse then is to pursue a Post Conviction procedure grounded upon a claim of ineffective assistance of counsel, a posture in which it is difficult for the accused to establish his claim.

I believe that under the facts and circumstances of this case, the trial court "committed a plain and irremediable error ... material to the rights of the accused, which deprived him of his right to a fair trial and which must be corrected to serve the ends of fundamental fairness and substantial justice." [9] Accordingly, I believe that, notwithstanding the absence of any objection, the judgment should be reversed and a new trial granted.

---

8. *See* 24 Md. App. at 53.

9. *Id.* at 52-53.