REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 1796

September Term, 2012

FARRAH C. STEWARD

v.

STATE OF MARYLAND


Woodward,
Wright,
Thieme, Raymond, G., Jr.
 (Retired, Specially Assigned),

JJ.


Opinion by Thieme, J.


Filed: August 27, 2014

On February 22, 2012, Farrah Steward, appellant, was pulled over for a minor infraction while driving a vehicle on Green Street in Havre De Grace, Harford County, Maryland. The officer who conducted the stop checked appellant's license and discovered that it was suspended. The officer issued appellant a citation for driving with a suspended license.

On September 24, 2012, following a one-day jury trial in the Circuit Court for Harford County, appellant was convicted on one count of driving with a suspended license. The circuit court subsequently sentenced appellant to serve one year in prison, all but thirty days suspended, to be followed by one year of unsupervised probation. In her timely filed appeal, appellant raised two questions for our consideration, which we have separated and simplified as follows:[1]

---

[1]The questions presented as set forth in appellant's brief read:

1. Under Maryland law, in order to find a defendant guilty of driving with a suspended license, a trier of fact must conclude, beyond a reasonable doubt, that the defendant actually knew of or was deliberately ignorant of the fact that her license was suspended. Was the evidence presented by the State – that the letter informing Appellant her license was subject to suspension was returned to the MVA by the postal authority – sufficient to support a jury conclusion that Appellant was guilty of the knowledge element of driving with a suspended license?

2. Did the trial court's instruction – that the knowledge element of the offense was satisfied if the State proved that Appellant "should have known" her license was suspended – fundamentally deprive Appellant of a fair trial such that this Court should take notice of it as plain error, and did defense counsel's failure to object to the instruction constitute ineffective assistance of counsel?

1. Was the evidence presented at appellant's trial sufficient to support appellant's conviction for driving with a suspended license?

2. Did the trial court commit plain error in instructing the jury regarding the elements of the charged offense?

3. Did the performance of appellant's trial attorney constitute ineffective assistance of counsel?

Discerning no error of law or abuse of discretion sufficient to compel us to undertake plain error review, we shall affirm the determinations of the circuit court.

## SUFFICIENCY OF THE EVIDENCE

## I

At trial, appellant did not contest the fact that she was driving a vehicle on February 22, 2012, or that her MVA driving record indicates that her license was suspended on that date. The only element of the offense of driving with a suspended license that was at issue in this case was whether appellant had the requisite *mens rea* at the time she purportedly committed the offense. In the first issue of her appeal, appellant contends that the evidence presented at her trial was not sufficient to demonstrate that she either knew or was willfully blind to the fact that her license was suspended when she undertook to drive a vehicle on February 22, 2012.

Preliminarily, we note that appellant's sufficiency argument was not properly preserved for appellate review. Maryland Rule 4-324(a) provides in pertinent part:

> A defendant may move for judgment of acquittal on one or more counts . . . at the close of the evidence offered by the State and, in a jury trial, at the close

of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted.

In this case, defense counsel made a motion for judgment of acquittal at the close of the State's case, asserting that the State had failed to produce any evidence that appellant had any knowledge that her license was suspended. Appellant then testified on her own behalf, effectively withdrawing the motion for judgment of acquittal. *See Warfield v. State,* 315 Md. 474, 487 (1989)("When a defendant offers evidence on his own behalf after his motion for acquittal is denied, the motion is withdrawn and not subject to review."). Defense counsel then made a motion for judgment of acquittal at the close of all evidence, but did not make any particularized argument in support of the motion, and did not expressly renew, submit, or otherwise adopt the arguments he had previously raised.

It is clear from the record that the trial court assumed that defense counsel's motion at the close of all evidence was intended to incorporate and renew the arguments he had presented in support of his previous motion, and the court addressed those arguments in rendering its determination. Because defense counsel did not make any particularized arguments in support of appellant's motion for judgment at the close of all evidence and did not in any way adopt his previous arguments, the motion did not satisfy the requirements of Md. Rule 4-324(a), and therefore, appellant's sufficiency argument was not properly preserved for appellate review. Md. Rule 4-324(a); Md. Rule 8-131(a). We are persuaded, however, that there was no confusion on the part of the trial court regarding the basis for defense counsel's motion for judgment at the close of all evidence, and thus, the purpose of

Md. Rule 4-324(a) was served. *See Warfield*, 315 Md. at 487 (opining that the purpose of the Rule's particularization requirement, "is to enable the trial judge to be aware of the precise basis for the defendant's belief that the evidence is insufficient."). In the interest of eschewing "magic words" and glorifying form over substance, therefore, we shall briefly address appellant's sufficiency argument.

**II**

When a question before this Court requires our review of the sufficiency of the evidence to support a conviction, we consider, "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Bordley v. State*, 205 Md. App. 692, 716 (2012)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *accord Smith v. State*, 415 Md. 174, 184 (2010); *see also Breakfield v. State*, 195 Md. App. 377, 392-393 (2010)(opining that the limited question before this Court is not "whether the evidence *should have* or *probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder.") (citation omitted) (emphasis in original).

This Court defers to the "unique opportunity" of the fact-finder to "view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses." *Bordley*, 205 Md. App. at 717 (citing *Smith*, 415 Md. at 185). We further decline to second guess any reasonable inferences drawn by the fact-finder, or to reweigh the fact-finder's resolution of

4

conflicting evidence. *Id*. "If the evidence 'either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt,' then we will affirm the conviction." *Bible v. State*, 411 Md. 138, 156 (2009) (quoting *State v. Stanley*, 351 Md. 733, 750 (1998)).

We independently assess the evidence presented in the instant case to determine, *de novo*, whether it was legally sufficient to sustain appellant's convictions. *See, e.g., Walker v. State*, 206 Md. App. 13, 41 (2012)(quoting *Polk v. State*, 183 Md. App. 299, 306 (2008), for the proposition, "[a]n assessment of the legal sufficiency of the evidence is not an evidentiary issue but a substantive issue, with respect to which an appellate court makes its own independent judgment, as a matter of law.").

**III**

The Maryland MVA tracks drivers' violations of the motor vehicle laws through a points system. Md. Code (1977, 2012) §16-402 of the Transportation Article ("Trans."). A driver who accumulates five points within a two year period is required to attend a driver improvement program. Trans. §16-404(a)(2). The MVA may suspend the license of an individual who fails to attend a driver improvement program. Trans. §16-206(a)(2)(I). A driver is "presumed to know the law regardless of conscious knowledge or lack thereof, and [is] presumed to intend the necessary and legitimate consequences of [his or her] actions in its light"). *Rice v. State*, 136 Md. App. 593, 605 (2001).

5

Driving with a suspended license is a statutory offense proscribed by Trans. §16-303(c). In order to convict a defendant under §16-303(c), the State has the burden of proving, beyond a reasonable doubt: (1) that the defendant was driving a motor vehicle, (2) at the time the defendant was driving, her license was suspended, and (3) that the defendant knew that her license was suspended. Trans. §16-303(c); *Rice*, 136 Md. App. at 604.

Knowledge is an essential element of driving with a suspended license. *See State v. McCallum*, 321 Md. 451, 457 (1991) ("[*M*]*ens rea* is required for the charge of driving while suspended."). In order to prove that an individual had the requisite *mens rea* at the time of the offense, the State must present evidence that the defendant either had actual knowledge that his or her drivers' license was suspended, or that the defendant was deliberately ignorant or willfully blind to the suspension. *Rice*, 136 Md. App. at 604 (adopting the analysis set forth in *McCallum*, 321 Md. at 458 (Chasnow, J., concurring)). Actual knowledge exists when a person has "an actual awareness or an actual belief that a fact exists." *Id*. at 601 (internal quotation marks omitted) (quoting *McCallum*, 321 Md. at 458 (Chasnow, J., concurring)). Deliberate ignorance, on the other hand, exists when a person "believes it is probable that something is a fact but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth." *Id*.

A driver is statutorily required to inform the MVA of any changes in their mailing address within thirty days of moving from the address shown on his or her license. Trans. §16-116(a). The failure to inform the MVA of an address change in a timely manner may

indicate that an individual is deliberately avoiding contact with the MVA. *See McCallum*, 321 Md. at 46 (considering evidence of defendant's failure to correct address as proof that he was deliberately avoiding contact with the MVA to evade notice of license suspension, and concluding that defendant was deliberately ignorant of suspension (Chasnow, J., concurring)).

**IV**

In the instant case, the record indicates that appellant's driver's license was previously suspended in May of 1998 after appellant failed to appear at a hearing in the District Court to contest a citation for driving without a license. In July of 2009 the MVA reinstated appellant's license after appellant paid the outstanding ticket and accepted the assessment of five points against her drivers' license. Because five points had been assessed against appellant's drivers' license in less than two years, in August of 2009, at the direction of the MVA, appellant attended a point system conference.[2]

Appellant's drivers' license was again suspended in December of 2010 after she failed to appear in the district court to contest a speeding ticket. That suspension was lifted on January 3, 2011, after appellant appeared at the courthouse and paid the outstanding fine. The speeding citation resulted in the assessment of another point against appellant's driver's

---

[2]Effective October 1, 2009, the MVA no longer requires drivers who have accumulated 5 points to attend a point system conference, but instead requires them to complete the longer and more comprehensive driver improvement program. Md. Code (1977, 2012 Repl. Vol.) §16-404 of the Transportation Article ("Trans.").

license, as a result of which the MVA directed her to attend a driver improvement program. Appellant's failure to attend the required driver improvement program led to the third suspension of appellant's license in February of 2011, which remained in effect at the time she was pulled over on February 22, 2012.

At her trial, appellant testified that she did not know that her drivers' license had been suspended until she was informed of that fact by the officer who pulled her over on February 22, 2012. Appellant explained that she was evicted from her apartment on January 4, 2011, and did not obtain another permanent residence until January of 2012, and therefore, she never received the MVA notices stating that she was required to attend a driver improvement program or that her license was suspended as a result of her failure to attend the program. Appellant's MVA driving record confirms that the notices that were sent to appellant in January and February of 2011 were returned by the postal service. Appellant further attested that she had never received any notice prior to the previous suspension of her drivers' license in December of 2010, after she failed to appear for a hearing in the District Court, attesting that she went to the court and paid the outstanding fine on January 3, 2011, of her own volition.

After appellant was cited for driving on a suspended license on February 22, 2012, she contacted the MVA and made arrangements to complete the required driver improvement program, which she did, on March 7, 2012. On March 8, 2012, appellant notified the MVA

8

of her new address. Also on March 8, 2012, the suspension on appellant's drivers' license was withdrawn and her license was reinstated.

Based on the evidence presented regarding the previous suspensions of appellant's drivers' license and her attendance at a point system conference in August of 2009, a jury could reasonably infer that appellant knew that if she acquired any more points on her license within a two year period, she would be required to attend a driver improvement program. The jury could also infer that appellant knew that her drivers' license would be suspended if she failed to attend the required program. Based on evidence that on January 3, 2011, appellant appeared at the courthouse and paid the speeding ticket she had received on July 4, 2010, the jury could conclude that appellant knew that an additional point had been assessed against her drivers' license. Based on appellant's failure to notify the MVA regarding her change in address for more than a year, the jury could infer that appellant was deliberately avoiding contact with the MVA.

Once appellant paid the fine and had the additional point assessed against her, she had reason to believe that the MVA would take action, first to require her attendance at a driver improvement program, and should she fail to do so, to suspend her driving privilege. Appellant's intervening homelessness does not negate her knowledge that there would be consequences attendant to her accumulation of an additional point on her license. Though we are persuaded that appellant did not have actual knowledge of her suspension because she did not receive mail at her former address following her eviction, her failure to contact the

9

MVA to inquire about the status of her license or to timely notify them of her new address indicates that her failure to know the status of her drivers' license was a result of her own intentional inaction. Therefore, despite appellant's arguments to the contrary, we are persuaded that based on the evidence presented, a reasonable jury could have concluded, beyond a reasonable doubt, that appellant was willfully ignorant of the fact that her driver's license was in a "suspended" status when she undertook to drive a vehicle on February 22, 2012, and therefore, she was guilty of the offense of driving with a suspended license.

We acknowledge that appellant's favored interpretation of the evidence is also reasonable, *i.e.*, that because of her eviction and subsequent homelessness, appellant had not received any of the notices sent by the MVA and therefore, had no knowledge that she was required to attend a driver improvement program and that failure to do so would result in the suspension of her drivers' license. *See Neal v. State*, 191 Md. App. 297 (2010) ("'Generally, if there are evidentiary facts sufficiently supporting the inference made by the trial court, the appellate court defers to the fact-finder . . . .'"). Indeed, defense counsel appropriately made arguments supporting appellant's interpretation of the evidence to the jury in his closing statement. Subsequently, the jury deliberated and made factual determinations that were contrary to appellant's favored interpretation, ultimately concluding that appellant was guilty of the charged offense. It is axiomatic that such factual determinations are best left to the jury. *See, e.g., Smith*, 415 Md. at 185 ("Because the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the

credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence."). "Although the jury could have drawn an inference more favorable to appellant, it was not required to do so." *McDonald v. State*, 141 Md. App. 371, 380 (2001). Discerning no error in the trial court's denial of appellant's motion for judgment of acquittal, we decline to overturn appellant's convictions on this basis.

## JURY INSTRUCTION REGARDING KNOWLEDGE ELEMENT OF OFFENSE

### I

At the close of all evidence, the trial court instructed the jury on the law applicable in the case. As part of the jury instructions, the court gave the following jury instruction regarding the elements of the offense of driving with a suspended license:

> The defendant is charged with driving a motor vehicle on a suspended license and privilege.

> I will now describe the elements of this crime, and your function is to determine whether the elements of this crime have been proved to your satisfaction beyond a reasonable doubt, and a Verdict Sheet will be provided to aid you in your deliberations.

> For this offense, in order to convict a person of driving while the person's license to drive is suspended, the State must prove the following things:

> (One) that the person who is charged was driving a motor vehicle.

> (Two) that the person's license to drive was suspended at the time of the incident; and

11

(Three) that the person had actual knowledge or should have known of the suspension.

Neither appellant nor her attorney raised any objection to the instruction at trial and appellant concedes in her appeal that this issue was not properly preserved for appellate review. *See* Md. Rule 4-325(e) (providing, "No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.").

Appellant, nonetheless, urges this Court to exercise our discretion and review the instruction provided by the trial court for plain error. *See* Md. Rule 4-235(e) (delineating this Court's power to "take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."). Appellant suggests that the court's instruction indicating that the jury could find appellant guilty of driving with a suspended license if she either knew or **should have known** that her license was suspended was clearly erroneous, and that the erroneous instruction lowered the State's burden of proof as to a required element of the offense, thus, depriving appellant of a fair trial.

## II

It is well established that "[a]n improper, objectionable instruction includes one that serves to relieve the state of its burden to prove a defendant's guilt beyond a reasonable doubt." *Stabb v. State*, 423 Md. 454, 464 (2011) (citing *State v. Evans*, 278 Md. 197, 207 (1976)). We review a trial court's decision to give or refuse to give an instruction under the

12

abuse of discretion standard. *Stabb*, 423 Md. at 465. When deciding whether a trial court abused its discretion, we consider whether the requested instruction was a correct statement of the law, whether it was applicable under the facts of the case, and whether it was fairly covered in the instructions actually given. *Id.* (and cases cited therein).

Plain error is error that is "so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial." *Diggs v. State*, 409 Md. 260, 286 (2009). An appellate court possesses "plenary discretion to notice plain error material to the rights of a defendant, even if the matter was not raised in the trial court." *Danna v. State,* 91 Md. App. 443, 450, *cert. denied,* 327 Md. 627 (1992). *See also* Md. Rules 4-325(e), 8-131(a). There are, however, limitations upon the consideration of plain error review: (1) there must be error (that the defendant did not affirmatively waive); (2) the error must be "clear and obvious," *i.e.*, not subject to reasonable dispute; and (3) the error must be material, meaning that it affected the outcome of the trial. *Kelly v. State*, 195 Md. App. 403, 432 (2010).

Even if an appellant is able to satisfy the threshold burden of proving a plain and material error, the Court need not recognize the error. *Sine v. State*, 40 Md. App. 628, 632 (1978), *cert. denied*, 284 Md. 748 (1979). The Court will exercise its discretion to recognize plain error only when it is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Brown v. State,* 169 Md. App. 442, 457 (2006) (internal quotation marks omitted). In deciding whether an error is sufficiently compelling to justify plain error

review, several pertinent factors are to be considered. They include: the opportunity to use an unpreserved contention as a vehicle for illuminating an area of law; the egregiousness of the trial court's error; the impact of the error on the defendant; and the degree of lawyerly diligence or dereliction. *Morris v. State,* 153 Md. App. 480, 518-24 (2003), *cert. denied,* 380 Md. 618 (2004). "In that regard, we review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Alford v. State*, 202 Md. App. 582, 617 (2011).

Because of the difficulty of demonstrating facts that are sufficiently compelling to invoke plain error review, it remains "a rare, rare, phenomenon," especially when the alleged error involves a missing or erroneous jury instruction. *Morris*, 153 Md. App. at 507. *See also Martin v. State*, 165 Md. App. 189, 196 (2005), *cert. denied*, 391 Md. 115 (2006) (The plain error hurdle, "high in all events, nowhere looms larger than in the context of alleged instructional errors.").

## III

Having reviewed the transcripts of appellant's trial and the applicable law, we agree with appellant that jury instruction that was provided by the trial court inaccurately stated the applicable law. Though no Maryland Court has specifically considered this issue in the context of a suspended drivers' license, we are persuaded that generally, evidence that an individual "should have known" a fact is not sufficient to prove that the individual either had

14

actual knowledge of the fact or was deliberately ignorant of the fact. *See McCallum*, 321 Md. at 461("Deliberate ignorance requires a conscious purpose to avoid enlightenment; a showing of mere negligence or mistake is not sufficient. Also, 'deliberate ignorance' is a *form* of knowledge, not a *substitute* for knowledge. Therefore, if [the defendant] actually believed that his driver's license was not suspended, he could not be guilty of the offense." (Chasanow J. concurring)); *see also One 1988 Jeep Cherokee VIN No. 1JCMT7898JT159481 v. City of Salisbury*, 98 Md. App. 676, 682 (1994) (distinguishing the subjective standard of actual knowledge, which requires a specific awareness, from the more objective "should have known" standard, which queries what a reasonable person would have known under similar circumstances (citing J. Chasanow's concurring opinion in *McCallum*, 321 Md. 451, in the accompanying footnote); *see also United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992) (opining that where the statute requires actual subjective knowledge or "willful blindness," evidence of what an individual objectively should have known was not sufficient to support conviction).[3] We are persuaded, therefore, that the jury instruction provided by

---

[3]In *Campbell*, the U.S. Circuit Court reproduced with approval the trial court's instruction to the jury regarding the element of knowledge, which included, in pertinent part:

> I caution you that the willful blindness charge does not authorize you to find that the defendant acted knowingly because she should have known what was occurring . . ., or that in the exercise of hindsight she should have known what was occurring or because she was negligent in failing to recognize what was occurring or even because she was reckless or foolish in failing to recognize what was occurring. Instead, the Government must prove beyond a reasonable doubt that the defendant purposely and deliberately contrived to
>
> (continued...)

15

the trial court at appellant's trial was legally incorrect, and had it been properly preserved, the court's provision of the erroneous instruction would have constituted reversible error. This conclusion does not, however, automatically require this Court to exercise our discretion and undertake plain error review. *See Sine*, 40 Md. App. at 633-34 (opining that an appellate court's discretion to recognize plain error will not be recognized as a matter of course, even where the error is clear).

In order to be "extraordinary," and thus cognizable on review, an error must be more than prejudicial, indeed, more than merely reversible, had the error been properly preserved. *Morris,* 153 Md. App. at 511. Having reviewed the record and the arguments of the parties, we are not persuaded that the trial court's error in the instant case was either so obvious or so egregious as to require plain error review.

We note that there is no pattern jury instruction for the statutory offense of driving with a suspended license. The plain language of the statute proscribing driving with a suspended license does not include knowledge of the suspension as an element of the offense. Trans. §16-303(c). The few published cases that have addressed the knowledge element of driving with a suspended license have established that there must be some evidence that the defendant had actual knowledge or was deliberately ignorant about the

---

[3](...continued)
avoid learning all of the facts.

*Campbell*, 977 F.2d 857.

suspension of his or her license in order to sustain a conviction, but no case has addressed whether evidence that the defendant should have known that his or her license was suspended is sufficient. *McCallum*, 321 Md. at 457; *Rice*, 136 Md. App. at 604. Thus, the question presented in this case, is one of first impression.

In the instant case, the record does not include copies of any jury instructions that were requested by either party. The transcript of appellant's trial does not include any discussion that may have occurred between the court and counsel regarding the content of the jury instructions. Neither party raised any objection to the jury instructions that were provided. Nor do any other recorded comments of counsel or the judge provide much insight regarding those individuals' knowledge of the applicable law. It is not clear, therefore, what references the court consulted to craft the language of the jury instruction regarding the elements of the offense with which appellant was charged.

Because judges are presumed to know the law, we infer that the trial court's error was the result of the court's effort to make the instructions easier for the jury to understand by substituting the commonly used phrase "knew or should have known" for the more legally accurate standard requiring either actual knowledge or deliberate ignorance. The trial court did clearly instruct the jury that the State was required to prove every element of the charged offense beyond a reasonable doubt. We discern nothing in the challenged jury instruction regarding the elements of the offense that negated the State's burden to prove, beyond a reasonable doubt, that appellant had some knowledge, either actual or constructive, of the

17

suspension. Moreover, during the State's closing argument, the prosecutor clarified that knowledge could be manifested as either actual knowledge or deliberate ignorance. Thus, the jury was informed about the correct legal standard, albeit not in the instructions from the court.

While we acknowledge the subtle legal distinction between the jury's consideration of whether an individual "should have known" a fact or whether a person was "willfully ignorant" of a fact, we are not persuaded that the outcome of the instant case would have been any different had the jury been accurately instructed by the trial court about the knowledge element of the offense of driving with a suspended license. In the end, this case turned on the jury's assessment of appellant's credibility. We can assume from the jury's unanimous verdict, that they were not persuaded by appellant's testimony.

In light of the nature of the case, the limited guidance available to assist the trial court in crafting its jury instructions as to the elements of the offense, and the absence of any timely objection from either party which would have notified the court regarding its easily corrected error, we conclude that the trial court's misstatement of the knowledge element of the offense of driving with a suspended license was not so egregious or extraordinary that this Court is compelled to undertake plain error review.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### I

Conceding that defense counsel failed to object to the erroneous jury instruction, appellant next urges this Court to consider whether defense counsel's failure to properly preserve her argument at trial constituted ineffective assistance of counsel. Generally, absent any "objective, uncontroverted, or conceded error," the issue of defense counsel's effectiveness is raised most appropriately in a post-conviction proceeding. *Haile v. State*, 431 Md. 448, 473 (2013). This is so, because "ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel." *In re Parris W*., 363 Md. 717, 726 (2001).

An appellant asserting ineffective assistance of counsel must show (1) "that counsel's performance was deficient," and, (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, an appellant must identify acts or omissions of his attorney that were objectively unreasonable in comparison to prevailing professional norms. *See Strickland*, 466 U.S. at 688 ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . under prevailing professional norms."). Appellate review of counsel's performance is highly deferential, and there is a strong (but rebuttable) presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

19

The record in this case does not include any information regarding what sources the court consulted or what input counsel might have had in crafting the language of the erroneous jury instruction. We note that though neither attorney raised any objection to the instruction and both attorneys adopted the same incorrect language in their closing arguments, it is clear from the record that the prosecutor, as least, knew that the State was required to prove either actual knowledge or deliberate ignorance on the part of appellant in order to support a conviction. Whether defense counsel's failure to object to the erroneous jury instruction arose from strategy, distraction, mistake, or ignorance cannot be discerned from the record before us.

Appellant asserts that there is no "sound trial strategy" that would explain defense counsel's failure to properly preserve appellant's argument regarding the erroneous jury instruction for appellate review. The record clearly indicates, however, that appellant's attorney was aware that what facts were within appellant's knowledge at the time she was cited was a question of fact for the jury. Throughout appellant's trial, defense counsel argued that due to her eviction and subsequent homelessness, there was no way appellant could have known about the suspension of her license. The State, in response, asserted that any ignorance on the part of appellant regarding her license status was the result of her own failure to properly notify the MVA about her change in address in a timely manner. Defense counsel might have strategically declined to object to the erroneous instruction believing that a sympathetic jury, while unable to escape the fact that appellant had not informed the MVA

20

of her new address in a timely manner, would be unlikely to conclude that appellant, who was homeless and ill during much of the relevant time period, "should have known" that her drivers' license was suspended. As we acknowledge above, defense counsel's argument was compelling, and could have supported an acquittal. Where an action might be reasonably attributed to "sound trial strategy," this Court will presume that counsel's conduct fell "within the wide range of reasonable professional assistance[.]" *State v. Latham*, 182 Md. App. 597, 613 (2008) (quoting *Strickland*, 466 U.S. at 689). In light of defense counsel's efforts throughout appellant's trial, we are not persuaded that his failure to object to the erroneous instruction constituted a violation of appellant's Constitutional right to effective assistance of counsel.

This is not a case like *Testerman v. State*, 170 Md. App. 324, 335, 340 (2006), where the undisputed facts were clearly insufficient to establish a required element of the offense, and none of the hundreds of cases considering similar issues would have supported the defendant's conviction. In this case, several key facts were in dispute and had to be resolved by the jury. Further, as we noted above, the question addressed in this case is not a well-settled matter of law. There have been few published cases addressing the judicially appended knowledge element of the statutory offense of driving with a suspended license and none have required the Court to consider the instructions that were provided to the jury regarding the elements of that offense. *McCallum*, 321 Md. at 457; *Rice*, 136 Md. App. at 604. *Compare Testerman*, 170 Md. App. at 340 (noting that not one of the "hundreds" of

reported cases from any state would support the defendant's conviction on the basis of the critical facts, which were not in dispute). Because neither the facts nor the law in the instant case were so conclusively established as to be immutable upon subsequent review, we are unable to decide appellant's ineffective assistance claim at this time.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**